USCA1 Opinion

 

 February 23, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1070 JUAN A. DAMIANI MONTALBAN, IVELISSE VAZQUEZ DE DAMIANI, AND THE CONJUGAL PARTNERSHIP COMPOSED BY BOTH, Plaintiffs, Appellants, v. PUERTO RICO MARINE MANAGEMENT, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boyle,* District Judge. ______________ ____________________ Guillermo Ramos Luina with whom Harry Anduze Montano was on brief _____________________ _____________________ for appellants. Gilberto Mayo Pagan with whom Gilberto Mayo Aguayo and Mayo & ____________________ _____________________ _______ Mayo were on brief for appellee. ____ ____________________ ____________________ _____________________ *Of the District of Rhode Island, sitting by designation. BOYLE, District Judge. ______________ Plaintiff-appellant Juan A. Damiani Montalban appeals an order granting summary judgment against him in a suit brought under P.R. Laws Ann. tit. 29, 146 (1985). Jurisdiction exists pursuant to 28 U.S.C. 1332(a)(1). We affirm. I. Background In accord with Fed.R.Civ.P. 56, the facts are considered in the light most favorable to the appellant. On March 24, 1989, after nearly ten years of service at Puerto Rico Marine Management, Inc. (PRMMI), Damiani was dismissed. At the time of his dismissal, Damiani was the Manager of Insurance in PRMMI's Department of Risk Management. He was 52 years old. The manner in which Damiani was dismissed represents a rather unceremonious conclusion to his career at PRMMI. On Friday, March 10, 1989, Fernando L. Guardiola Lopez, the Manager of PRMMI's Department of Loss Prevention informed Damiani that Victor Carreras, the Vice-President of Industrial Relations at PRMMI, had asked Guardiola to tell the appellant that he would be "laid off" effective March 24, 1989. On Monday, March 13, 1989, the appellant asked his supervisor, Juan Jeannot why he was being terminated. Jeannot was unable to provide an explanation for PRMMI's action. Jeannot stated he would look into the matter and get back to Damiani. By letter, dated March 13, 1989, Enrique Gonzalez, Vice-President of Finance and Administration of PRMMI, reiterated that Damiani's layoff would be effective March 24, 1989 and advised him to contact the Personnel Department to review his benefits. The letter concluded with the offer to provide references to aid Damiani in finding a new position. Although the exact date is unclear, Damiani acknowledges receipt of this letter no later than March 22, 1989. After March 13, 1989, Damiani met with Rafael Reyes, PRMMI's Personnel Director. Damiani contends that Mr. Reyes first learned of his layoff the morning of their meeting. At this meeting, Damiani again demanded an explanation for his dismissal. Reyes, however, was also unaware of the reasons for Damiani's dismissal. From the start, Damiani maintained that his dismissal was unjustified and continually requested that PRMMI provide an explanation for his dismissal. In each conversation concerning his employment status, Damiani stated that the dismissal action was "arbitrary and unfair -3- 3 and that unless I was retained I would file whatever judicial action was necessary to protect my rights and obtain redress for any damages which were going to be substantial because of my time with the company, my excellent job execution and my age." Damiani's last day at PRMMI was March 24, 1989. On July 24, 1989, he sent a letter to J. P. Toomey, the President of PRMMI. In the letter, Damiani outlined his contributions to the company and recommended PRMMI create an independent appeals board to review actions such as promotions, demotions, and dismissals. Damiani asserted that an impartial review of his situation would result in his reinstatement. On March 23, 1990, Damiani sued PRMMI in federal district court invoking diversity jurisdiction, 28 U.S.C. 1332. The complaint asserted three causes of action, the first, pursuant to P.R. Laws Ann. tit. 29, 185a (1989)(Law 80), for an additional month's salary as indemnity because he was terminated from his employment without just cause, the second for monetary damages for age discrimination pursuant to P.R. Laws Ann. tit. 29, 146 (1985)(Law 100)1 ____________________ 1 Section 146 provides in part: "Any employer who discharges, lays off or discriminates against an employee . . . on the basis of age . . . : -4- 4 ( 146 or Section 146), and the third for money damages for mental distress because of his discriminatory discharge based on age. (Complaint at 5-7.) In the portion of his complaint entitled "Request for Remedy" he alleged that he had suffered injury "caused by the willful, illegal, discriminatory and/or negligent actions of the defendant" and sought front pay in lieu of reinstatement, back pay, lost benefits, damages for pain and suffering, severance pay, double payment of all sums as double indemnity, costs and attorneys fees, prejudgment interest and any other just relief which plaintiff estimated to equal not less than two million three thousand eight hundred dollars ($2,003,800.00). On August 31, 1991, PRMMI filed a motion for summary judgment contending that Damiani's age discrimination claim was barred by the statute of limitations and that the amount of Damiani's Law 80 claim, standing alone, was insufficient to supply the court with subject matter jurisdiction under 28 U.S.C. 1332. PRMMI's motion did not address Damiani's third claim for money damages for mental anguish because of his termination based ____________________ (a) shall incur civil liability (1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action;" P.R. Laws Ann. tit. 29, 146 (1985). -5- 5 on age. That cause of action, based on alleged age discrimination, would also be time barred. We see no need to return this matter to the district court to do what must be done, that is to dismiss Count III. The district court granted the motion as to Counts I and II. Damiani appeals that judgment. Damiani, in his brief, states that no appeal is taken from the determination that his Law 80 claim, alone, does not meet the jurisdictional amount. II. Discussion Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In certain cases, Rule 56 may be used to determine whether a statutory time bar applies to a particular set of facts. See, e.g., Jensen v. Frank, 912 ___ ____ ________________ F.2d 517, 520 (1st Cir. 1990); Kali Seafood, Inc. v. Howe ___________________________ Corp., 887 F.2d 7, 9 (1st Cir. 1989). At the outset, we _____ note that the review of a grant of summary judgment is plenary. Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st ___________________________ Cir. 1990). In the present case, our inquiry focuses on whether the record reveals a genuine issue of any material fact relative to the timeliness of Damiani's suit. Doyle v. ________ Shubs, 905 F.2d 1 (1st Cir. 1990)(per curiam). Damiani _____ -6- 6 contends that the time of accrual of his action as well as whether the action was tolled under the law of Puerto Rico constitute genuine issues of material fact. In Olmo v. Young & Ribicam of P.R., Inc., 10 __________________________________________ Official Translations of the Opinions of the Supreme Court of Puerto Rico 967 (1981), the Supreme Court of Puerto Rico addressed the applicable statute of limitations for an action brought under 146. In Olmo, the plaintiff brought ____ an action under 146 alleging he had been discharged because of his race. Since the statute did not provide a specific limitation period, the Olmo court determined that ____ the one year statute of limitations applicable to other civil actions for damages based on racial discrimination was appropriate for an action under 146. Id. at 972-73. ___ The Olmo court described actions brought under ____ 146 as actions for "tortious discrimination." Id. at 972. ___ That description is instructive in determining when Damiani's action accrued. Under Puerto Rico law, all actions for civil liability based on fault or negligence are time barred after one year "from the time the aggrieved person had knowledge thereof." P.R. Laws Ann. tit. 31, 5298 (1991). In the instant case, the district court held -7- 7 that Damiani's cause of action accrued on March 10, 1989, the date he was informed of his termination. We agree. The Supreme Court of Puerto Rico has addressed when an action for wrongful discharge accrues. In Delgado _______ Rodriguez v. Nazario de Ferrer, 121 D.P.R. ___, 88 J.T.S. 63 ______________________________ (No. CE-86-417, official translation) (1988), the plaintiff was informed on March 19, 1981 that he would be terminated effective April 15, 1981. Before he was terminated, the plaintiff initiated an administrative claim with the Board of Appeals of the Personnel Administration System. On March 7, 1984 the Board of Appeals reinstated the plaintiff. On March 1, 1985, the plaintiff filed a civil action seeking damages for wrongful termination. The Supreme Court of Puerto Rico determined that the statute of limitations began to run when the aggrieved party became aware of the damage. The Delgado Rodriguez court determined that the plaintiff's __________________ cause of action was time barred because it accrued the day he received notice of his termination, March 19, 1981. Id. ___ at 11 (No. CE-86-417, slip op. at 11). A similar analysis has been applied in wrongful termination cases brought under 42 U.S.C. 1983. In Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349 (1st Cir. ___________________________________ 1992), the plaintiff was informed that his name was removed -8- 8 from an employment roster. Two years later, the plaintiff filed an action in federal court alleging his employer's actions had deprived him of property without due process of law. The Rivera-Muriente court stated that: _______________ [i]n employment discrimination cases involving wrongful discharges, the statute of limitations begins to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal). Id. at 353. In determining when Damiani's action accrued, ___ our inquiry is when did Damiani become aware he would be terminated? Damiani argues that Guardiola's statement did not commence the running of the statute of limitations. Damiani contends that a fellow manager could not provide the requisite notice of his dismissal. In Damiani's view, Guardiola's statement fails to trigger the statute of limitations because it amounts to mere speculation and rumor. This contention fails, however, when the facts of the notice are analyzed. In an affidavit attached to his opposition to the motion for summary judgment, Damiani admits that Guardiola stated he was acting under orders from Victor Carreras, Vice-President of Industrial Relations at PRMMI. Thus, Guardiola was dispatched to deliver the unfortunate news by a superior. This action was not mere -9- 9 gossip or speculation, but a sanctioned delegation of duties by PRMMI's administration. Although Damiani felt the use of Guardiola as a messenger was not appropriate, it effectively conveyed notice to Damiani that he would be terminated. Damiani further argues that Guardiola's statement did not effectively provide notice of dismissal because Guardiola was unaware of the reasons for PRMMI's action. As we have noted, in cases such as this, the statute of limitations begins to run when the aggrieved party learns of the decision to terminate him. Rivera-Muriente v. Agosto- ___________________________ Alicea, 959 F.2d at 353. An employer's failure or refusal ______ to provide an aggrieved employee with the reasons for termination has no effect on the commencement of the statute of limitations. The date an employee becomes aware that he has been damaged by a decision to terminate, his cause of action begins and the longevity of that claim for purposes of the statute of limitations is set. On March 10, 1989, Damiani became aware that he would be terminated, therefore the statute of limitations for any claim of damages under 146 then began to run. Damiani next contends that his conversations with various PRMMI personnel constitute extrajudicial claims sufficient to toll the statute of limitations. Tolling of -10- 10 the statute of limitations is provided for in P.R. Laws Ann. tit. 31, 5303 (1991) ( 5303 or Section 5303). That section states: [p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgement of the debt by the debtor. P.R. Laws Ann. tit. 31, 5303. The district court noted that Damiani relied principally on his letter, dated July 26, 1989, as evidence of an extrajudicial claim. Damiani _______ Montalban v. Puerto Rico Marine Management, Inc., No. 90- __________________________________________________ 1426, slip op. at 6 (D.P.R. Sept. 18, 1991). In this forum, however, he relies exclusively on his oral conversations with PRMMI personnel. Under 5303, the statute of limitations may be interrupted by the "unequivocal statement of one who, threatened with the loss of his right, expresses his will not to lose it." Feliciano v. A.J.A., 93 P.R.R. 638, 643 ____________________ (1966). The Supreme Court of Puerto Rico has noted that the tolling exception to the statute of limitations must be interpreted restrictively. Diaz de Diana v. A.J.A.S. Ins. _______________________________ Co., 10 Official Translations of the Opinions of the Supreme ___ Court of Puerto Rico 604, 607-608, n. 1 (1980). In order to toll the statute of limitations, the extrajudicial claims must be precise and specific. Jimenez v. District Court, 65 _________________________ -11- 11 P.R.R. 35, 42 (1945). The purpose of requiring a precise and specific claim is to alert the defendant of claims that would otherwise lapse. In Riofrio Anda v. Ralston Purina, Co., 959 F.2d _____________________________________ 1149 (1st Cir. 1992), the plaintiff was hired under an oral contract. After his termination, the plaintiff negotiated with his employer concerning relocation and termination compensation which he claimed was required under his oral agreement. His attorney wrote to the employer and stated his intention to "file an unlawful discharge complaint" against the employer. The plaintiff then filed an action in the United States District Court for the District of Puerto Rico seeking money damages for breach of his contract of employment with respect to remuneration and relocation expenses, wrongful discharge and unlawful termination, and mental pain and suffering resulting from willful acts committed by the defendants at the time of termination. We held that the attorney's letter was inadequate to toll the statute of limitations because the letter did not give defendant "fair notice that a lawsuit based on breach of contract and wrongful discharge were in the offing." Riofrio Anda v. Ralston Purina, Co., 959 F.2d at 1154. ___________________________________ -12- 12 In addition, tolling requires that the plaintiff must claim the same relief that is later requested in the suit. Hernandez Del Valle v. Santa Aponte, 575 F.2d 321, ____________________________________ 323-24 (1st Cir. 1978). In Del Valle, the plaintiff sent a __________ letter contending that his dismissal was illegal and seeking reinstatement. The court held that the letter failed to toll the statute of limitations for a 1983 action for unlawful discharge which sought reinstatement and damages. The court emphasized that the letter indicated that plaintiff's sole interest was reemployment. The court reasoned that the letter failed to give the defendant "fair notice that he would be called upon to defend a damages suit with different issues not applicable to a suit for injunctive relief." Id. at 324. Similarly, in Riofrio Anda ___ ____________ v. Ralston Purina Co., this court applied Del Valle, by _______________________ __________ emphasizing that to effectively toll the statute of limitations an extrajudicial claim must request the same relief ultimately sought in a federal suit. Ralston Anda v. _______________ Ralston Purina Co., 959 F.2d at 1154. An extrajudicial ____________________ claim does not toll the statute of limitations for all claims arising out of the same facts. Rather, tolling is effective only with regard to identical causes of action. -13- 13 Rodriguez Narvaez v. Nazario, 895 F.2d 38, 43 (1st Cir. ______________________________ 1990). In the present case, Damiani's statements seek retention as an employee while alluding to possible legal action. His complaint, however, seeks a variety of damages including damages in lieu of reinstatement. Damiani's statement can not be deemed a precise and specific claim for relief ultimately sought in his lawsuit. His cryptic comment suggesting that his damages would be substantial because of his age did not provide PRMMI with fair notice that it would be called upon to defend a suit seeking damages resulting from age discrimination. Damiani's final argument is that a decision of a more recent vintage from the Supreme Court of Puerto Rico modified tolling requirements. As support for this proposition, Damiani points to Zambrana Maldonado v. ________________________ Commonwealth of Puerto Rico, 130 D.P.R. __, 92 J.T.S. 12 ____________________________ (1992)(Translation Provided). In Zambrana Maldonado, the ___________________ plaintiff sent a letter to the Secretary of Justice alleging he had a claim for damages against the government. The plaintiff's letter stated that he was notifying the government of a claim and provided the date, place, damages suffered, the cause and nature thereof and a list of -14- 14 possible witnesses. Id. at 15. P.R. Laws Ann. tit. 32, ___ 3077a (1968) (Section 3077a) requires a claimant against the government to give notice of the claim including the date, place, cause and general nature of the damages suffered, the names of witnesses, the address of the claimant as well as the place where medical treatment was received. Section 3077a requires that such notice be given within ninety (90) days of the awareness of the damages. Failure to provide notice within the ninety day period bars a suit against the government. The Supreme Court of Puerto Rico held that the plaintiff's written claim of damage tolled the statue of limitations. Zambrana Maldonado v. Commonwealth of Puerto ______________________________________________ Rico (translation at 35). The Zambrana Maldonado court ____ __________________ maintained that the interruption of the statute of limitations requires "conduct in which, more or less tractably and more or less categorically or urgently, the decision to obtain payment is shown." Id. at 23. The court ___ held that the notice which complied with the statute was sufficient to toll the statute of limitations. Plaintiff points to language in the court's opinion which states that the law does not require any particular form of notice. The court observed that "[n]o matter how the claim is made it has interruptive value..." Id. In this context, the ___ -15- 15 opinion cannot be read as a broadening of the type of notice required. The issue is not the form of the notice, it is the content of the notice. Here, the content is deficient to support the legal action which has been brought. Damiani's statements did not evidence an urgent decision to obtain payment for damages under 146. III. Conclusion _______________ Damiani's statements did not toll the one year statute of limitations. Dismissal was required as a matter of law. Affirmed. ________ -16- 16